Mr. Robles was the treasurer of the city of Southgate and he was convicted of federal funds bribery under 18 U.S.C. section 666. The government proceeded on a theory at trial that Mr. Robles accepted campaign contributions with the intent to be influenced with respect to the business of Southgate. Following the Supreme Court's opinion in McCutcheon, it's evident that that intent to influence, the influence theory, is invalid because it is an unbounded, as the Supreme Court said in Citizens United and McCutcheon, it's an unbounded theory that's not subject to any... Your client was convicted of something quite different than what they dealt with in McCutcheon, was he not? Well, that's true. In McCutcheon, they were dealing with regulations and potential civil penalties, I suppose, with respect to campaign finance contributions. And that was the basis of the district courts distinguishing McCutcheon. But the principles that are set out in McCutcheon are broad constitutional principles. Well, let me back up a second. You, of course, are well familiar with our United States v. Garrido, in which your client was also involved. At that time, I think McCutcheon had already been decided, McDonald had not, but we viewed that as being a very different issue. Here, just a flat-out bribe and attempt to influence what happened. How can we ignore Garrido? Actually, at the time that Garrido was decided in 2013, McCutcheon had not yet been decided. McCutcheon was decided in 2014. It was actually decided a couple of weeks before Mr. Robles filed his motion for retrial or reconsideration of the previous denial of his motion for retrial. And he raised McCutcheon, and he said, look, Citizens United was not a campaign contribution case, but McCutcheon surely is, and it announces those same constitutional principles in the context of a campaign contribution setting. And going back to the question about McCutcheon was a different setting than a criminal case, again, the constitutional principles there, the First Amendment principles at issue and the concerns about chilling are really at their height in the criminal context, because when people are faced with potential criminal sanctions, they're, of course, more likely to curtail their protected First Amendment speech than they are when they're faced with just civil penalties. And that's recognized by a number of cases that are cited in the opening brief, not just Citizens United and the Supreme Court's McConnell case from 2013, but more general cases of Houston v. Hill and Winters v. New York. And the government itself in the subsequent 2016 McDonnell case acknowledged that the principles in play in McCutcheon were transferable or applicable in the criminal case. They specifically, and this is quoted on pages 27 to 28 of the opening brief, in their, this list of general briefs in McDonnell, they discuss McCutcheon and say, look, McCutcheon lays down this rule applicable in McDonnell in a criminal case to protect against infringement of constitutionally protected rights. And they say after discussing McCutcheon, they say the existence of a quid pro quo is thus the key to distinguishing between lawful campaign contributions and unlawful bribes. A donor who gives money in the hope of unspecified future assistance does not agree to exchange payments for actions. No bribes thus occur if the elected official later does something that benefits the donor. And not only are they discussing the impact of McCutcheon, they're quoting from criminal case law. They then go on subsequently in the brief to say in a corruption case involving campaign contributions, the instruction should carefully focus the jury's attention on the difference between lawful political contributions and unlawful extortionate payments and bribes to ensure that the jury does not infer a quid pro quo merely because an elected official took actions favorable to a contributor. Let me ask you, oh go ahead please. The success of your argument regarding quid pro quo then depends on the introduction of the computer evidence, right? No, it does not. There are five bribery counts here. I assume your Honor is asking if it depends on the introduction of the new evidence with respect to the computer evidence. The new computer evidence, right. And it does not. I'm not relying on the new evidence at all. With respect to four of the five counts, that is those counts that didn't deal with the computer, the district court acknowledged that the evidence was, the jury could only have found that those were campaign contributions. The district court found with respect to the computer count that the evidence was equivocal but that the jury could infer that it was a gift rather than a campaign contribution. But of course the jury also could have inferred and the evidence more strongly supported that it was a campaign contribution given that all these other things that were given were campaign contributions. And also given that under California law, the presumption is when a politician receives something in that context, it is presumed to be a campaign contribution. Now that last point, the district court discusses in its order, I believe, and that's in the excerpt of record, the post-trial order. It's at the excerpt of record of 2012. The district court acknowledges that it didn't instruct the jury with respect to the state law presumption in that regard. But nonetheless, the presumption under state law and the evidence certainly admitted to a finding and probably the stronger finding was that it was a campaign contribution. And what McCormick makes clear is that if the jury could have found it was a campaign contribution, then they need to be advised with respect to quid pro quo. Because in McCormick, there was actually strong evidence that these were gifts, that the things involved were gifts, not campaign contributions. But the Supreme Court said, well, but there was also evidence they were campaign contributions. So that's why the jury needed to be carefully instructed with respect to the quid pro quo and needed to make a finding in that regard. So the new evidence is irrelevant to the argument here. And the district court as much as recognized that and dealt with the purely legal impact of McCutcheon, I think that's an excerpt of record. So can you comment on the procedural posture? You're here now appealing the denial of a motion for a new trial that was not filed within the three-year time period. That's correct. And also the motion for reconsideration. That's correct. So is it the interests of justice based on this new case law that you're relying on? How do we get to the issues that you're raising? Well, I think the easiest and the primary way to get there would be to rely on this court's holding in Van Alstyne. And what Van Alstyne said was that if an appellant raises an issue of sufficiency, an initial appeal that's unsuccessful, but the case is remanded for another purpose, in that case an amyline remand, and then comes back on appeal again, and if when that second appeal is pending, new Supreme Court case law comes out that throws the sufficiency of the evidence and the convictions into question, it is permissible then to raise that issue at that time. And that's exactly what Mr. Robles is doing here. In that case, it was the impact of the Supreme Court Santos case. In this case, it's the impact of the Supreme Court's McCutcheon case. The only difference is Mr. Robles did it one step further. He did it one step earlier. He raised it in the district court, which was really the appropriate thing to do, rather than just wait in under Van Alstyne and raise it for the first time in this court. You know, furthermore, the district court has authority to reconsider a prior motion, a prior motion for a new trial or any prior motion based on intervening Supreme Court case law, and the district court specifically found that it had that authority with respect to the McCutcheon issue, and I think that's at ER 278 to 279, citing cases like Santa Monica Baykeeper and Smith. Well, your position is it doesn't matter how long it is after the initial trial and jury verdict that if there's a new Supreme Court case, you can go back and ask the trial court to open it up again. Twenty years? Thirty years? Does it matter? Well, in 20 or 30 years, it would be unlikely that the case would be coming back on a direct appeal, so I think you'd have to be raising it on 2255, and therefore you'd have to be getting into whether or not the 2255 new case law, retroactivity, those sort of things were in play. But in the direct appeal context, it's a different analysis, and Van Alstyne sets it out. And if you can do it on the direct appeal after remand, it certainly serves to reason you could also do it in the district court. And again, the district court's power to reconsider its prior rulings, recognized in several cases, supports that as well. Do you want to save any of your time? I do. I'll just wrap up by saying thank you, Your Honor. From a practical perspective, that makes sense, because Mr. Robles could go and raise this on a 2255 after this, presumably. He's already served his term, though, hasn't he? He's out of jail? Yes, but he is on supervisory leave. So he may end up not being able to raise it, and of course I think it's squarely presented to the courts. It's a legal issue, and there's no reason not to address it right now. Van Alstyne gives the court the authority to do so. Thank you. We'll save the rest of your time. Good morning. Good morning, Mr. Court. Assistant United States Attorney Lawrence Middleton, appearing on behalf of Appellee United States of America. This matter appears before this court on the appeal of a motion for new trial, a motion for new trial that was raised more than eight years after the expiration of the limitations period for the filing of a motion for new trial based on newly discovered evidence. Under those facts, in the district court, the court properly found that the motion for new trial was untimely. In addition to the fact that the motion for new trial was untimely, defendant was unable to make the showings necessary to succeed on a motion for new trial. First of all, defendant was in fact relying on newly discovered evidence or what he characterized as newly discovered evidence in the form of a computer and computer software, which the defendant claimed had been used for purely political purposes and therefore was a campaign contribution. The defendant argued that he didn't have that computer during the time of the trial and that it was unavailable to him, and therefore it was newly discovered. It was part of his argument at trial, though, was it not? He referenced the computer and its existence. He did, and it was charged, and one of the reasons it was not newly discovered evidence is because he was aware of it at trial, and the arguments that he makes or that he made in his motion for new trial eight years later or more than eight years later or after the expiration of the limitations period was that it had been used for political purposes. He could have presented evidence of that in his initial trial, but he chose not to, and one of the reasons it's clear that he chose not to is because that wasn't the theory of his defense at the original trial. So first of all, he couldn't show that it was newly discovered evidence, but in addition to the fact that he couldn't show and the district court found that it wasn't newly discovered evidence, he couldn't show that even if it was newly discovered that he had exercised due diligence in attempting to find it and make it available. In the district court, the defendant presented two declarations, one his own and one of someone who was identified as his girlfriend, and in neither of those declarations did the defense present any evidence as to what efforts had been made to locate the computer at the time of the trial. Counsel, your opponent indicated that four out of five, if I recall correctly, of the charges did not deal with matters related to the computer. Will you respond to that? Is he correct? What's he talking about from your perspective? Well, there were some other items for the payment of some campaign flyers, I think the payment of a telephone system, a number of other things that were actually identified in the indictment, some of them as campaign contributions. So there wasn't any dispute as to what those items were or whether they may or may not have been campaign contributions. The only issue is the newly discovered evidence because that was the defendant's avenue for getting back into court and challenging his convictions. So he could have said everything that ultimately turned out to be on the computer at the trial even though the computer was not available. He certainly could have presented some evidence as to how it had been used and what was on that computer. That's correct, Your Honor. He certainly knew if, in fact, it had been used for political purposes, then you wouldn't necessarily need to have that computer there in order to present evidence as to how it was used. Counsel makes use, of course, of McCutcheon and McDonnell somewhat evades Garrido. Would you comment on what role, if any, those two Supreme Court cases, McCutcheon and McDonnell, should have on our analysis of this motion, the appeal of a motion for a new trial? Well, Your Honor, the government's position is it should have none. In fact, the defense suggests now that he had two different arguments in the district court. One, the motion for a new trial, and then this new intervening case law. And he argues now that those are two different grounds, and now he's simply relying on the latter. The truth of the matter is he only had one, and that was his newly discovered evidence. As the district court pointed out, in order to make the newly discovered evidence relevant, he needed an intervening change in the law. So that's how those two things meshed. But also, as the district court pointed out, McCutcheon, which is the primary case that he relies on, doesn't really introduce any new principles of law. In fact, as the district court pointed out, the theory that the only sufficiently important governmental interest in preventing corruption or the appearance of corruption that could justify limits on political expenditures is limited to quid pro quo corruption was endorsed by the Supreme Court in Citizens United. So the principle that he's relying on was around even at the time of Garrido. So if, in fact, it somehow changed the law of quid pro quo corruption with respect to Section 666, then certainly that case was available to this court at that time. So the government believes, as the district court did, that there is no intervening change in the law that necessitates a rethinking of Garrido. And Garrido is really the law of the case in most respects, is it not? I'm sorry, Your Honor? Garrido is, in many respects, the law of the case here because Mr. Robles was involved in that. That's absolutely correct, Your Honor. I guess the other reason the government would say that there's no need for a reexamination of Garrido based on McCutcheon and the other cases that have been cited by the defense is that they're not irreconcilable. I think as this court has suggested, they really talk about two different bodies of law. McCutcheon and the other cases cited by the defendant are really cases that are aimed at regulating the political process. And for the most part, they do it by placing limitations on the amounts that donors can contribute to political campaigns. 666, on the other hand, is clearly a federal corruption statute. That's what it is. And what it does is essentially it fills a gap between Section 201, which applies to federal actors, and 1346, which is the honest services statute, which can apply to state or federal actors, but only when there's a mailing or wiring. 666 allows for the prosecution for corruption of state actors where federal funds are involved.  Absolutely not, Your Honor, which is why, again, McDonnell has absolutely no applicability to what we're discussing here. And I would also go on to say that, and the defendant opened by suggesting that the defendant was convicted of intending to influence in the business of Southgate. But the defendant was convicted of something much more specific than that. He was convicted of accepting something of value, intending to be influenced in connection with a contract, a specific contract, having a value of in excess of $5,000. This is the waste contract, right? That's correct, Your Honor. In fact, it was a $48 million contract. So this is not a case where a jury could have convicted the defendant for conduct that was simply conduct that looked at ingratiating or providing access. It was conduct surrounding a very specific contract. And also, Your Honor, what we're looking at is not any restrictions on anyone's ability to fund a campaign or to make campaign expenditures. In fact, under 666, it doesn't matter whether someone or the defendant accepts $5,000, $5,000, or $5 million. There are no limits under 666. What it does prohibit, though, is the defendant accepting that money in connection with a specific transaction having a value of more than $5,000, and it prohibits his doing so corruptly. And so there are safeguards in the statute itself which protect against the kinds of concerns that are raised in the campaign finance context. There's no exact quid pro quo required under 666, is there? That is correct, Your Honor. It only requires that he accept the money intending to be influenced, but it does have this language that specifically says, in connection with, and then from there you have a specific contract or transaction or series of contracts or transactions. So it's very similar to a quid pro quo, but there's no quid pro quo language in 666. So the government's view is, under the circumstances, one, the defendant, as a matter of law and procedure, is here in the appeal of a motion for new trial that was untimely. The district court probably found that it was untimely. It's still untimely. And even if we were to look at this case on the merits, there is no intervening case law that changes the law under 666, and the law that the defendant relies on, to some extent, was very much available at that time just based on Citizens United and some of the other cases before it. And the law isn't irreconcilable. Great. We appreciate your argument. Do either of my colleagues have any other questions? I do not. Okay. Thank you very much, counsel. Thank you, Your Honor. You have a little bit of rebuttal time, counsel. Thank you, Your Honor. First, I'd point out that Mr. Klistoff, who supposedly made the bribes, who made the campaign contributions, testified, and he indicated that there was no agreement at the time he made the contributions. There was no discussion, even, of the waste contracts. And that's cited in the brief. It's in the ER 56, 58, 65 to 66, 72 to 73, 76 to 77, 91 and 94. Secondly, the argument here is that McCutcheon undermines Garrido. Garrido was issued in April 2013. McCutcheon came out in April 2014. So the argument is under Miller v. Gamme, McCutcheon undermines the whole thing in Garrido. So it doesn't just undermine. Under Miller v. Gamme, the rationale, the logic behind it has to be completely destroyed, basically. And I think that it is. The broad holding in McCutcheon and what the government argued in McDonnell, and I recognize McDonnell is dealing with a different statute, but what the government recognized in McDonnell is the obvious, which is these Supreme Court principles about chilling protected speech and making a contribution to a local politician is protected, just the same as making a contribution to a federal politician, that the chilling concerns mean that there has to be a quid pro quo showing rather than just some general influence theory. Because in the reality, in public financing of campaign, people make contributions to politicians, and like it or not, politicians are more responsive to the people who support them. Counsel, just very quickly, because I know you're out of time, but your way out of untimeliness is through the newly discovered evidence and Mr. Middleton had talked about due diligence. Do you just want to comment very quickly on that? Yes. We are not relying on the new evidence at all. We are relying on the intervening case law of McCutcheon, and the district court even acknowledged at ER 275 and its order that you, you know, that's an independent thing. It kind of blended the two together, but the intervening case law is an independent thing, and that's all we're relying on. We're not relying on the new evidence at all. So you realize you lose on that one, right? Yes. Well, we're not. Thank you for that. Thanks very much to you both for your argument. The case just argued is submitted.
judges: M. Smith, Nguyen, Settle